THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* EDWARD STEWART, Defendant.

City Court of Utica, Sitting as a Court of Special Sessions, March 6, 1944.

*William Andrushin* for plaintiff.

*Nicholas G. Powers* for defendant.

WALSH, J. The defendant is charged with violating Ordinance No. 332 of 1914 of the City of Utica, which reads: " * * * no person shall in any case or under any circumstances, not otherwise specially provided for by law, resist, delay or obstruct a police officer of the City of Utica in discharging or attempting to discharge a duty of his office, under a penalty of not to exceed Fifty Dollars ($50.00) for each offense." ·

The facts demonstrate that the complainant, a police officer of the City of Utica, received a call to go to the home of the defendant. When he and another police officer reached the house they were admitted by a small boy. Inside, the defendant and his wife were engaged in heated argument. While the police officers were in the room, defendant's wife demanded that they arrest her husband for assault and, during the course of this conversation, defendant made an attempt to strike his

wife. The complainant then placed defendant under arrest and the defendant resisted their efforts to take him from the house. Although the defendant denies any resistance, the facts clearly demonstrate that such resistance took place.

Defendant, in the first place, challenges the validity of the ordinance, contending that the same is inexpertly drawn; that it was enacted without power on the part of the City of Utica to legislate on the subject, since no such power was ever delegated to the City of Utica; and that, since the State of New York has passed legislation on this particular matter, the City of Utica is prevented from so doing.

Defendant, in the second place, argues that if the ordinance is declared valid by the court he is not guilty of violating the ordinance because the complaining police officer was not discharging or attempting to discharge any duty of his office but was in fact an intruder in defendant's home.

In considering the challenge to the validity of the ordinance, it is well to inquire into the facts surrounding the enactment in 1914 by the Common Council of Ordinance No. 332.

In that year, certain persons were discharged in the City Court of Utica upon a charge of violating section 1851 of the Penal Law by forcibly delivering prisoners from the custody of police. Section 1851 of the Penal Law (adopted in 1909 from section 124 of the old Penal Code) provided then as it does now: " § 1851. *Resisting public officer in the discharge of his duty.* A person who, in any case or under any circumstances not otherwise specially provided for, wilfully resists, delays, or obstructs a public officer in discharging, or attempting to discharge, a duty of his office, is guilty of a misdemeanor." Counsel for defendant states in his brief that the City Court of Utica at that time (1914) " was of the opinion that Penal Law, 1825 and Penal Law, 1851, which refer to resistance of an ' executive officer ' and of a ' public officer ' did not include ' police officer ' '". On July 16, 1914, the Common Council adopted Ordinance No. 332 to cover " a police officer of the City of Utica ". That the City Court at that time had reasonable ground to doubt the applicability of section 1851 of the Penal Law is demonstrated by the fact that no case had been reported up to that time which declared a local " police officer " to be a " public officer ".

In 1914 the legislative power of the City of Utica was, as it is now, vested in the Common Council, whose legislative authority was and is found in section 30 of the Second Class Cities Law, which reads as follows: " The legislative power of the city is vested in the common council thereof, and it has authority to enact ordinances, not inconsistent with law, for the government

of the city and the management of its business, for the preservation of good order, peace and health, for the safety and welfare of its inhabitants and the protection and security of their property; and its authority, except as otherwise provided in this chapter, or by law, is legislative only."

Clearly, therefore, in 1914 the Common Council of the City of Utica had the power to enact the ordinance in question. A municipal ordinance is a local law prescribed by a municipality for application within its jurisdiction, and its validity, in general, depends upon two fundamental requirements: (a) that the local municipality possess sufficient power under its charter or State statute, and (b) that such power be exercised in a manner consistent with the constitution and laws of the State. As to the first requirement, the Second Class Cities Law conferred sufficient power, as did the Charter of the City of Utica (see Charter of the City of Utica, L. 1862, ch. 18, § 35; amd. by L. 1923, ch. 658). As to the second requirement, there was considerable doubt that section 1851 of the Penal Law applied to " police officers " so that the enactment could not be held to be arbitrary or unreasonable. It was designed to protect a " police officer " of the City of Utica in the discharge of his duties.

If this ordinance was valid when adopted in 1914, as we have held, can it thereafter become invalid because of legislative action or judicial interpretation which removes the doubt as to the applicability of a State statute?

The Legislature has not up to the present time clarified section 1851 which remains the same as it was in 1914. Defendant calls the court's attention to the case of *People* v. *O'Connor* (257 N. Y. 473), which was an appeal from a judgment of conviction in the Schenectady Police Court, convicting defendant O'Connor of violating section 1825 of the Penal Law, after arrest on charges of assault in the third degree and of driving an automobile while intoxicated. The Court of Appeals held, *Per Curiam,* that " the prisoner did not resist an officer in the performance of any duty ". Defendant contends that besides being a reaffirmation of defendant's civil rights, the *O'Connor* case might be authority that section 1825 of the Penal Law covers the ground and that the ordinance cannot be enforced.

Repeals of local ordinances by implication are not to be favored. In *Village of Cohoes* agt. *Moran* (25 How. Prac. 385, 387) it was stated that the repeal of a village ordinance by implication derived from a subsequently enacted State law is not to be favored, and with equal force, it may be stated that repeal of a city ordinance by implication derived from a judicial

decision which did not pass squarely upon the question at issue but reversed the conviction upon a different ground is not to be favored by this court. But going even further than that, this court holds that even if by implication the *O'Connor* case held a " police officer " to be an " executive officer " (Penal Law, § 1825) or a " public officer " (Penal Law, § 1851), that the ordinance in question would not be invalid.

While it is clear that an ordinance which is aimed at conditions which constitute felonies under State law would be void, breach of the ordinance in question is made a misdemeanor (Second Class Cities Law, § 42). Sections 1825 and 1851 of the Penal Law are likewise of the grade of misdemeanor. Under ample charter powers, ordinances carrying appropriate penalties forbidding acts also made penal by statutes relating to the following subjects have been sustained: (1) sale of liquor (*Village of Cohoes* agt. *Moran,* 25 How. Prac. 385, *supra; People* v. *Fenton,* 144 Misc. 710); (2) sale of milk (*Polinsky* v. *People,* 11 Hun 390); (3) regulation of vehicles (*People* v. *Dwyer,* 26 N. Y. Crim. Rep.); (4) pawnbrokers (*Marfisi* v. *Wilson & Company,* 166 Misc. 887).

In *City of Rochester* v. *Macauley-Fien M. Co.* (199 N. Y. 207, 211) the Court of Appeals provided a yardstick for measuring the validity of local ordinances, saying: " The common council is thus the judge as to what ordinances it will pass for the safety and welfare of the inhabitants of. the city and the protection and security of their property, and unless an ordinance passed by it is wholly arbitrary and unreasonable it should be upheld. The necessity and advisability of the ordinance is for the legislative power to determine. The presumption is in favor of the ordinance.''

The ordinance is not wholly arbitrary or unreasonable. It was and is designed to protect a " police officer " of the City of Utica in the discharge of his duties within the city of Utica. Defendant cannot successfully claim that the difference in penalties between the ordinance and the State statute is arbitrary or unreasonable since the difference operates in his favor. The ordinance is therefore valid and enforcible.

Passing to the question of whether defendant is guilty of violating the ordinance in question, defendant vigorously maintains that the complainant was not discharging or attempting to discharge any duty of his office but was, in fact, an intruder in defendant's home.

While a man's home is his " castle " and entry may not be gained therein as long as he obeys the law, a police officer has

a duty to investigate all complaints and, in doing so, has the right of a private person to knock at the door of defendant's home and seek admission. In the case at bar, such admission was granted by a small boy. When the complainant entered, he observed defendant and his wife in argument. Defendant's wife stated that she " wanted " defendant arrested for assault.

A private person has a right to arrest another for a crime committed or attempted in his or her presence (Code Crim. Pro., § 183) and must without unnecessary delay either take him before a magistrate or " deliver him to a peace officer " (Code Crim. Pro., § 185). Defendant's wife had a perfect right to arrest defendant and deliver him to complainant.

Complainant had the same right to arrest for a crime committed in his presence (Code Crim. Pro., § 177).

Accordingly, on the facts shown, either defendant's wife or the complainant could have arrested the defendant. An arrest is the " taking of a person into custody that he may be held to answer for a crime." (Code Crim. Pro., § 167.)

The facts demonstrate that the arrest in any event was legal. If made by the complainant for a crime committed in his presence, he was discharging a duty of his office, and resistance to such officer constitutes a violation of the ordinance. If made by defendant's wife, she was not required to actually touch the body of defendant (*Gold* ads. *Bissell,* 1 Wend. 210) but could deliver him constructively to the peace officer. This was her duty under the law (Code Crim. Pro., § 185). It was then the duty of complainant to deliver defendant to the nearest magistrate without unnecessary delay. This duty is fulfilled by the officer holding the defendant in custody or upon " police " bail until the next session of court. He was thus discharging his duty at the time.

There are no magic words which make an arrest legal or illegal. We are concerned in this case with the question whether defendant resisted, delayed or obstructed a police officer in " discharging " or " attempting " to discharge a duty. The complainant was either arresting defendant for a crime committed in his presence or in the act of delivering a person, arrested by a private person and delivered to him, to the nearest magistrate. In either event, he was " discharging " a duty of his office.

The testimony produced showed without the shadow of a doubt that defendant resisted complainant and continued to resist complainant and other police officers until he was " booked " before the desk sergeant at police headquarters.

Defendant is found guilty as charged.